UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN MCKENDREE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 09-cv-464-JPG |
| ) | |
| ILLINOIS CENTRAL RAILROAD ) | |
| COMPANY, a corporation, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the amended motion of defendant Illinois Central Railroad Company ("Illinois Central") to transfer this case to the United States District Court for the Western District of Tennessee pursuant to 28 U.S.C. § 1404(a) (Doc. 30). Plaintiff John McKendree has responded to the motion (Doc. 32), and Illinois Central has replied to McKendree's response (Doc. 33).

**I.     Background**[1]

McKendree began working for Illinois Central in 1970, when he was hired in Fulton, Kentucky. Fulton is in the Western District of Kentucky but is very close to its border with the Western District of Tennessee. In 1974, McKendree became a locomotive engineer and began making daily trips from Memphis, Tennessee, to Cairo, Illinois. The more than 150-mile journey required substantial travel across the Western District of Tennessee and across the Western District of Kentucky, but only reached into the Southern District of Illinois for the final few miles of the trip. He continued these trips up to the late 1990s. In the 1980s, he also drove trains an unspecified number of times from Memphis to Centralia, Illinois. The more than 250-mile journey required substantial travel across the Western District of Tennessee, the Western

---

[1] The Court notes that the parties have attached voluminous evidence to which they do not cite with specificity in their briefing. It is the parties' job to point the Court to the relevant evidence; the Court will not scour the record in search of evidence to support or to oppose a motion. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). Accordingly, to the extent the evidence is not cited in the relevant briefing, the Court has disregarded it.

District of Kentucky and the Southern District of Illinois. For about the past ten years, McKendree has been headquartered in Memphis, within the Western District of Tennessee but very close to its border with the Northern District of Mississippi. He currently lives in Oxford, Mississippi, within the Northern District of Mississippi and approximately 85 miles from Memphis, the location of the main office of the United States District Court for the Western District of Tennessee.

McKendree brought this case in the Southern District of Illinois under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* He seeks compensation for injuries he suffered in two discrete incidents that occurred while he was working as a locomotive engineer for Illinois Central. The first incident occurred on January 23, 2007, in Memphis, Tennessee, when McKendree attempted to adjust a seat in a locomotive in which he was working (Count II). The second incident occurred on October 30, 2008, in Fulton, Kentucky, when McKendree attempted to turn a hand brake (Count III). McKendree also seeks compensation for cumulative trauma injuries he suffered while working for Illinois Central (Count I).

The witnesses in this case are concentrated in the Western District of Tennessee or within approximately 110 miles of Memphis, including all of McKendree's medical providers except one surgeon and one medical imaging center in Chesterfield, Missouri. In addition, five or six witnesses reside in the Southern District of Illinois (there is a question about where one witness lives). Other witnesses reside in the Southern District of Mississippi, the Northern District of Illinois, Wisconsin or Canada.

Illinois Central believes the case belongs in the Western District of Tennessee in light of the location of McKendree's employment as a whole, the discrete events in Counts II and III and the important witnesses as well as that district's interest in this case. Accordingly, it filed the pending motion to transfer venue for the convenience of the parties and witnesses and in the interest of justice. McKendree maintains that a transfer of venue is not warranted because of his travels in the Southern District of Illinois, the location of witnesses and other factors.

**II.     Transfer Standards**

Illinois Central does not contest that venue is proper in the Southern District of Illinois under 28 U.S.C. § 1391 or 45 U.S.C. § 56 and therefore does not seek a change of venue pursuant to 28 U.S.C. § 1406, which governs transfer or dismissal when venue is improper. *Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964). Indeed, Illinois Central is an Illinois corporation with its headquarters in the Northern District of Illinois and business operations in the Southern District of Illinois. Therefore, under 28 U.S.C. § 1391(c), it is deemed to be a resident of, among other districts, the Southern District of Illinois and is subject to venue here.[2]

Instead, Illinois Central relies exclusively on 28 U.S.C. § 1404(a), under which a district court may transfer a civil action to any other district where the action might have been brought originally "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The decision to transfer a case is left to the discretion of the district court. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Van Dusen*, 376 U.S. at 622; *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986); *see Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955).

In deciding a § 1404(a) motion to transfer, the Court should consider a number of case-specific factors such as the convenience of the potential transferee forum to the parties and witnesses and the interests of justice in general. *Stewart*, 487 U.S. at 29-30; *see Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986) (citing *Van Dusen*, 376 U.S. at 622). "The movant . . . has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient," *Coffey*, 796 F.2d at 219-20, and the Court must give some weight in favor of the forum in which the plaintiff chose to file the complaint, *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *Macedo v. Boeing Co.*, 693 F.2d 683, 688 (7th Cir. 1982).

Courts frequently consider specific factors such as the plaintiff's choice of forum, the

---

[2]Venue is also proper in the Western District of Tennessee where Illinois Central has substantial business operations.

location of the relevant events, documents and evidence, the convenience to the witnesses and parties, the relation of the controversy to the forum, the court's familiarity with the applicable law and the speed with which a case can be tried. *Methode Elecs., Inc. v. Delphi Auto. Sys. LLC*, 639 F. Supp. 2d 903, 907 (N.D. Ill. 2009). Even if the circumstances indicate that a transfer would be clearly more convenient to the parties and witnesses, a court may still refuse to transfer the case if it is not in the interest of justice. *Coffey*, 796 F.2d at 220; *Van Dusen*, 376 U.S. at 625. "Factors traditionally considered in an 'interest of justice' analysis relate to the efficient administration of the court system," including where the litigants are more likely to receive a speedy trial. *Coffey*, 796 F.2d at 221.

**III.    Analysis**

In light of the particular circumstances of this case, the Court finds that Illinois Central has met its burden of showing that the Western District of Tennessee is clearly more convenient than the Southern District of Illinois and that a transfer of venue is in the interest of justice.

  A.    <u>Plaintiff's Chosen Forum</u>

The plaintiff has chosen to file this lawsuit in the Southern District of Illinois. Ordinarily the Court should give this factor substantial weight and should rarely transfer a case from the plaintiff's selected forum. *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003). However, the importance of the plaintiff's choice of forum is reduced when the plaintiff does not live in the forum, few relevant events occurred in the forum and other factors weigh heavily in favor of a transfer.

Here, McKendree and his family reside in Oxford, Mississippi, within 85 miles of Memphis, Tennessee, where this case is likely to be tried if it is transferred. In contrast, Oxford is approximately 318 miles from the Benton courthouse, where this Court sits. Thus, it would be vastly more convenient for McKendree to litigate in Memphis than to litigate in Benton. Furthermore, the incident giving rise to Count II occurred in the Western District of Tennessee, and the incident giving rise to Count III occurred just outside that district in Kentucky, and a

relatively small portion of McKendree's work for Illinois Central and train travel giving rise to his cumulative trauma claim in Count I occurred in Southern District of Illinois. Although there is some connection between this lawsuit and the Southern District of Illinois, as discussed below, in light of the fact that McKendree does not reside in the Southern District of Illinois, the two discrete incidents in issue have no connection to the Southern District of Illinois, and the cumulative trauma claim is not strongly related to the Southern District of Illinois, the Court gives little weight to McKendree's choice of forum.

      B.      <u>Convenience to the Witnesses</u>

It is clear that trial in the Western District of Tennessee is more convenient than trial in the Southern District of Illinois to the witnesses having the most relevant testimony.

As for the fact witnesses to the January 23, 2007, incident in Count II, three important witnesses (other than McKendree himself) – the supervisor to whom the incident was immediately reported (Carl Sheridan), the conductor at the time of the incident (John Hickerson), and the post-event investigator (Charles Baker) – reside in the Western District of Tennessee. Another important witness, the Illinois Central employee who inspected the seat (Chad Becker) resides in the Northern District of Illinois, convenient to neither the Southern District of Illinois nor the Western District of Tennessee. Other witnesses – those involved in manufacturing the seat in issue (Debbie Mears) and in following up on McKendree's seat malfunction issue on behalf of Illinois Central (George Lau, Jim Danielwicz) – reside in either the Northern District of Illinois or Canada, also inconvenient to both potential venues for this case. The person who followed up on McKendree's seat malfunction issue on behalf of his union (John Koonce) resides in the Western District of Tennessee. Finally, Illinois Central's mechanical department supervisor who can testify about defective locomotive seats resides in the Southern District of Illinois, although it is unclear whether he can provide any specific information as to McKendree's incident. Although it appears the witnesses who can testify as to the incident in Count II are widespread, a substantial portion of them reside in the Western District of

Tennessee, where trial would be more convenient for them. The only witness – one who may not have any specific testimony as to the particular incident in Count II – resides in the Southern District of Illinois. Trying this case in the Southern District of Illinois may be more convenient for that witness and the outlier witnesses than trying the case farther away in the Western District of Tennessee. The Court notes, however, that Memphis may actually be more convenient than Benton if the outlier witnesses choose to travel by air; there is no major metropolitan airport in Benton like there is in Memphis.

As for the fact witnesses to the October 30, 2008, incident in Count III, two important witnesses (other than McKendree) – the conductor at the time of the incident (D. Gilliland) and the post-event investigator (Charles Baker) – reside in the Western District of Tennessee. Another important witness, McKendree's supervisor at the time of the incident (Ed Steinbeck), resides in Canada, convenient to neither the Southern District of Illinois nor the Western District of Tennessee. The Western District of Tennessee is clearly more convenient to the majority of the important witnesses to Count III than the Southern District of Illinois.

As for the witnesses to Count I, the Court gives very little weight to the convenience of witnesses who can testify about the track or equipment conditions in the Southern District of Illinois. It is clear that a minute fraction of McKendree's exposure to repetitive movements occurred on tracks in southern Illinois. Less than 1% of each trip from Memphis to Cairo occurred in Illinois, and there is no evidence that McKendree's trips to Centralia during the 1980s occurred often enough to substantially contribute to any repetitive movements he encountered in his more than thirty-year career with Illinois Central. Furthermore, there are likely as many, if not more, witnesses to the conditions of the tracks and equipment in Tennessee and Kentucky, where the vast majority of McKendree's exposure to repetitive movements occurred. Many of those witnesses are likely to be within or close to the Western District of Tennessee. As for McKendree's supervisors, they are in the Southern District of Illinois (Tom Corzine), the Western District of Tennessee (J. Ed Regel) and in Canada (Derek Taylor). The

convenience factor as to them is a wash.

As for McKendree's damages witnesses, those most able to testify about the impact of his injuries on his daily activities are those around him at his home in Oxford, Mississippi, and at his work in Memphis. Trial in Memphis would be more convenient to them than trial in Benton.

As for the medical witnesses, the majority are in northern Mississippi, far closer to Memphis than Benton. The only medical witnesses for whom Benton might be more convenient are McKendree's surgeon and medical imaging center, both of which are located in Missouri, just outside the Southern District of Illinois. Clearly, it is more convenient for the majority of the medical witnesses who will testify in this case to try the case in the Western District of Tennessee.

Other witnesses named in the briefs without explanation of their significance are clustered around Memphis as well.

As for the defendant, there is no evidence trying the case in the Western District of Tennessee would be less convenient than trying this case in Benton.

As for the location of the documentary evidence, considering the pervasive use and availability of electronic records and methods of transmission, this factor weighs in favor of neither district.

Weighing all of the foregoing, the Court finds that it is clearly more convenient for the parties and a majority of the most important witnesses for this case to be heard in the Western District of Tennessee despite McKendree's decision to file the case in the Southern District of Illinois.

C. <u>Interest of Justice</u>

The interest of justice does not warrant a contrary decision.

The Court does not give much weight to the relative speed with which this case can be tried. Illinois Central argues that a transfer is warranted because it will receive a speedier trial in the Western District of Tennessee. In support, it cites a Federal Court management statistical

report showing the median time from civil case filing to trial in 2008 was 2.6 months shorter in the Western District of Tennessee (26.4 months) than in this district (29 months).  *See* U.S. District Court – Judicial Caseload Profile, http://www.uscourts.gov/cgi-bin/cmsd2008.pl (2009). However, McKendree points out that the same report shows the median time from civil case filing *to disposition* (which includes civil cases not resolved by trial) favors the Southern District of Illinois (9.4 months) over the Western District of Tennessee (11.8 months).

       The Court is hesitant to place much value on a single year's statistics in light of the variations from year to year in the historic median times to disposition or trial.  For example, the Southern District of Illinois and the Western District of Tennessee have flip-flopped numerous times since 2003 as to which is speedier with respect to trial.  For these reasons, the Court finds that neither district is likely to provide McKendree a significantly speedier resolution of his case than the other district.

       In any case, the Court believes the difference in median time from complaint to disposition or trial is not a very reliable indicator of how long this *particular* case will take to try and, even if it were, does not justify keeping the case in this district in light of all the other circumstances favoring a transfer to the Western District of Tennessee.

       Other relevant factors such as a court's familiarity with the relevant law – a federal statute litigated frequently in both districts – favor neither district.

       Most importantly, the interest of the United States District Court for the Western District of Tennessee is far greater than this district's negligible interest in resolving this case.  A great deal of the repetitive motion exposure in Count I occurred in the Western District of Tennessee, the incident in Count II occurred completely within the Western District of Tennessee, and the incident in Count III occurred just outside the Western District of Tennessee.  In comparison, a minuscule part of the repetitive motion exposure in Count I occurred in the Southern District of Illinois, and no part of Counts II or III have any connection to this district.  The Southern District of Illinois has virtually no interest in this case, and its court resources and its citizens should not

8

be burdened with having to try it.

In sum, the interest of justice weighs heavily in favor of transferring this case to the Western District of Tennessee.

### IV.     Conclusion

For these reasons, the Court finds that the convenience to the witnesses and the parties and the interest of justice favor litigating this action in the Western District of Tennessee. Accordingly, the Court **GRANTS** Illinois Central's amended motion to transfer (Doc. 30) and **TRANSFERS** this case pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Western District of Tennessee.

**IT IS SO ORDERED.**
**DATED:  January 11, 2010**

                                                s/ J. Phil Gilbert
                                                **DISTRICT JUDGE**